*58 ATTORNEY DISCIPLINARY PROCEEDINGS.
hPER CURIAM.
This disciplinary matter arises from six sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Joshua G. Frank, Jr., an attorney licensed to practice law in Louisiana, but currently on interim suspension.[1] For the reasons assigned, we now disbar respondent.
UNDERLYING FACTS

The Richard Matter (00-DB-092)

Raymond Richard retained respondent to represent him in a personal injury matter. In May 1997, respondent negotiated a settlement with Audubon Ins. Co. (“Audubon”), through its adjuster, Charles Roy. By the terms of the settlement, respondent agreed to dismiss his client’s suit against Audubon with prejudice. Respondent further agreed that his client would be responsible for all court costs. Pursuant to this agreement, Mr. Roy sent respondent a settlement check and release, requesting that the release be returned with the judgment of dismissal confirming that respondent’s client paid all court costs.
Respondent returned the signed release to Mr. Roy together with a copy of a judgment of dismissal. However, contrary to the settlement agreement, the judgment | ¡incorrectly stipulated that Audubon, rather than respondent’s client, would pay the court costs. Respondent did not withhold *59 court costs from his client’s portion of the settlement, nor did he submit payment for the costs.
Thereafter, Mr. Roy made numerous attempts to contact respondent to amend the judgment to conform with their agreement. Finally, in October 1997, respondent submitted a corrected judgment to the court, which the court signed. However, the clerk’s certificate again indicated that costs had not been paid.
Mr. Roy continued to attempt to resolve the court cost issue with respondent in order to obtain final dismissal, but was unsuccessful. Ultimately, Audubon paid the outstanding court costs, totaling $284.50.
Mr. Roy thereafter filed a complaint with the ODC citing respondent’s refusal to adhere to the terms of the settlement agreement. Respondent filed an answer stating only that after he was contacted by counsel for complainant, he readily agreed to sign a judgment stating that defendant would pay all court costs.

The Domingeaux Matter (00-DB-120)

Peter Domingeaux retained respondent to represent him in a personal injury matter. In May 1999, respondent negotiated a settlement on behalf of Mr. Domingeaux in the amount of $9,203.00. The settlement statement provided by respondent to Mr. Domingeaux revealed that respondent withheld $4,703.00 of the settlement to pay Mr. Domingeaux’s outstanding medical bills, including a $340.50 bill from Opelou-sas General Hospital (“Opelousas General”). However, respondent failed to send the disbursement check to Opelousas General for approximately one year after the settlement, because the check allegedly had been misplaced in respondent’s office. |3When Opelousas General attempted to negotiate the check in May 2000, it was not honored due to insufficient funds in respondent’s trust account.
Opelousas General filed a complaint with the ODC. The ODC sent a copy of the complaint to respondent, asking him to provide information about the matter. Respondent failed to answer the ODC’s request, nor did he appear pursuant to a subpoena served upon him by the ODC. However, approximately one month after the complaint was filed, respondent provided restitution to Opelousas General.

The Vallare Matter (01-DB-057)

Respondent represented Webster Val-lare, a plaintiff in a suit pending in the United States District Court for the Western District of Louisiana. In January 2000, Magistrate Judge Mildred Methvin issued a scheduling order setting February 18, 2000 as the deadline for the parties to submit a joint status report. The counsel for defendant faxed certain inserts to respondent for inclusion in the report and requested a meeting with respondent in order to prepare the joint report. Respondent failed to prepare his portion of the report.
As a result, counsel for the defendant filed a motion for continuance. On February 22, 2000, Judge Methvin ordered respondent to contact defense counsel and to submit the joint report by March 8, 2000. When respondent failed to comply with the order, the court set a rule ordering respondent to appear and show cause on March 30, 2000 why he failed to comply with the February 15 and March 8 deadlines. The court further ordered that if the joint status report was submitted by March 23, 2000, the show cause hearing would be canceled. Respondent received copies of the notice of hearing by regular and certified mail.
| ¿Respondent did not comply with the March 23, 2000 deadline. On the morning of the scheduled show cause hearing, March 30, 2000, Judge Methvin’s law clerk *60 received a telephone call from respondent’s secretary who stated that respondent was in state court and would not be attending the hearing. However, respondent’s secretary advised that she would fax the joint status report to the court.
Judge Methvin concluded the faxed report was deficient because it inadequately described plaintiffs contentions, did not include defendant’s contentions, did not address the status of discovery, and did not contain respondent’s signature. Moreover, because the report was submitted after the March 23, 2000 deadline, it had no bearing on the court’s order that respondent appear for the March 30, 2000 show cause hearing. Accordingly, Judge Methvin found that respondent failed to show cause why he disregarded the court’s prior orders and that his failure to appear at the hearing constituted contempt.
Judge Methvin filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to provide any information.

The Henry/Ortego Matter (01-DB-078)

In 1999, respondent assumed responsibility for disbursement of $4,500 in funds resulting from the personal injury settlement of Sandra Faye Henry.[2] Respondent disbursed $4,500.00 as gross recovery on Ms. Henry’s case but failed to withhold any funds to pay expenses. Respondent assured Ms. Henry that her account with Ortego Chiropractic Clinic (“Ortego”) had been paid in full. In fact, she had an outstanding balance of $1,375.00.
| KSubsequent investigation revealed respondent had failed to withhold and/or remit payment to Ortego in several other client matters, in which he had agreed to be responsible for all medical costs upon settlement of cases. In July 1999, Ortego agreed to allow respondent to pay $500.00 per month toward the outstanding balance. Pursuant to this agreement, respondent made payments in July, August, September, November and December 1999 and in February, July and October 2000. However, as of the date of the complaint, respondent still owed Ortego approximately $7,000.00 for approximately twelve different patient accounts.
In connection with its investigation of the Henry/Ortego matter, the ODC served respondent with a subpoena requiring his appearance and requesting documents. Respondent appeared and produced the Sandra Henry file and computer printouts purporting to be bank statements. However, he failed to produce the actual bank statements, failed to produce the actual signed settlement statement in the Henry case and failed to produce copies of the front and back of cancelled checks.

The Guidry Matter (02-DB-021)

On November 20, 2000, Ms. Dorothy Hooper retained respondent to represent her son, Exalton Guidry, Jr., on a second degree murder charge. At the time, Mr. Guidry was being represented by court-appointed counsel. Ms. Hooper paid respondent $1,500.00 as a downpayment and agreed to pay monthly installments of $250.00.
The case went to trial on November 29, 2000. After the jury was selected, respondent appeared in court. He moved to substitute himself as counsel and requested a continuance of the trial. The trial court denied the motion to continue. The court also refused to allow respondent to substitute himself as counsel, but agreed | fito permit respondent to enroll as eo- *61 counsel along with Mr. Guidry’s court-appointed attorney. Respondent elected not to enroll and left the courtroom. Subsequently, the jury found Mr. Guidry guilty and he was sentenced to life in prison at hard labor without benefit of parole, probation or suspension of sentence. Following the conviction, respondent filed a motion for appeal but took no other steps to represent Mr. Guidry.
Ms. Hooper and her daughter made repeated attempts to contact respondent for information on the disposition of Mr. Gui-dry’s case, to request that his file be returned, and for a refund of the $1,500.00 retainer fee. Respondent failed to offer an accounting or explanation to Ms. Hooper regarding the work he performed nor did he return the file to her.[3]
Ms. Hooper filed a complaint with the ODC. The ODC forwarded this complaint to respondent. In response, he stated that he elected not to enroll as counsel because if he did, he would not be able to appeal or apply for post-conviction relief on the basis of ineffective assistance of counsel. He asserted that he informed Mr. Guidry of this strategy. He further stated that he intended to file post-conviction relief for Mr. Guidry.
The ODC served respondent with a subpoena requesting his appearance and the production of the Guidry file. Respondent failed to appear and failed to produce the file.

The Mitchell Matter (02-DB-021)

Billy Jerod Mitchell retained respondent to represent him in a federal drug and firearm case pending in the United States District Court for the Western District of 17Louisiana. On October 2, 2001, respondent failed to participate in a telephone pre-trial conference scheduled with Magistrate Judge Mildred Methvin. According to respondent’s later deposition testimony, his secretary made a calendaring mistake.[4] Two days after missing the pre-trial conference, respondent failed to attend the hearing to show cause why he should not be found in contempt of court, though his office did call to request that the hearing be rescheduled because respondent had a court conflict. Judge Methvin denied the rescheduling request due to its untimeliness.[5] The assistant U.S. attorney and counsel for co-defendant attended the show cause hearing and the court questioned them about respondent’s representation of his client, Mr. Mitchell. During this hearing, Judge Methvin learned the assistant U.S. Attorney had made a plea offer, but respondent had neither contacted his client nor the assistant U.S: attorney to discuss the offer.[6]
*62 Is Judge Methvin filed a complaint with the ODC. Respondent failed to respond to the complaint.[7] However, he later filed an answer denying any wrongdoing and seeking dismissal of the charges as meritless.

The Edwards Matter (02-DB-061)

Respondent represented Calvin Edwards, Jr. in a personal injury action. Mr. Edwards sought treatment for his injuries with Dr. Michael Lee of Creswell Chiropractic Clinic. Respondent agreed in writing that he would be responsible for payment of all medical costs associated with Mr. Edwards’ treatment. In addition, respondent and Mr. Edwards executed an Assignment and Recognition of Lien to the clinic.
After Mr. Edwards was discharged from Dr. Lee’s care, Dr. Lee forwarded respondent the final statement which totaled $1,135.50. In the meantime, respondent had commenced settlement negotiations with the responsible insurer, State Farm Insurance Company. State Farm forwarded respondent a medical payment check in the amount of $1,135.50 to cover the medical expenses incurred by Mr. Edwards. However, respondent failed to remit payment to Dr. Lee.
Later, respondent reached an agreement with State Farm to settle the general damage portion of Mr. Edwards’ claim for $3,000.00. Following the settlement, State Farm forwarded the settlement check and documents to respondent. However, respondent failed to notify Dr. Lee that the claim was settled and failed to remit payment to the clinic.
1^Approximately two years later, respondent contacted Dr. Lee’s office and offered to pay $650.50 and the balance a month later. Dr. Lee refused these payment terms and told respondent he needed to pay the full amount by October 1, 2001. Respondent then indicated that he would pay $650.50 on October 1, 2001 and the balance by October 8, 2001. Thereafter, respondent paid only $600.00 of the $650.50 he promised to pay on October 1, 2001 and he failed to remit the remaining balance of $535.50.
Meanwhile, in August 2001, Dr. Lee filed a complaint with the ODC. The ODC served the complaint on respondent in September 2001 and in November, the ODC took respondent’s deposition. Respondent stated that he settled the Edwards case around the time that he got divorced. In addition, he stated that his drug addiction was active during the time he represented Mr. Edwards. He concedes that he received the medical payment cheek and he “was not handling [his] business like [he] should have been.”
DISCIPLINARY PROCEEDINGS

Formal Charges

In the Richard matter (00-DB-092), the ODC alleged respondent’s failure to pay court costs violated Rule 8.4 of the Rules of Professional Conduct, although the *63 charges did not specify the applicable subsection.
In the Domingeaux matter (00-DB-120), the ODC filed formal charges against respondent, alleging he commingled client funds and failed to protect third party funds, in violation of Rules 1.15(a) (safeguarding elienVthird party property), 1.15(b) (notifying elienVthird party upon receipt of property) 1.15(c) (duty to keep property separate pending accounting), 8.4(a) (violation of the Rules of Professional Conduct) |1f)8.4(b) (commission of criminal act) and 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation). The ODC also alleged that respondent’s failure to cooperate with its investigation and failure to comply with a subpoena violated Louisiana Supreme Court Rule XIX, Section 9(a) and (c) and Rules 3.4(c) (knowingly disobeying the rules of a tribunal), 8.1(c) (failing to cooperate with ODC), 8.4(a) and 8.4(g) (failing to cooperate with the ODC).
In the Vallare matter (01-DB-057), the ODC alleged that respondent failed to provide competent representation to his client, failed to act with diligence, failed to expedite litigation, failed to comply with court orders and failed to cooperate with the ODC, all in violation of Rules 1.1(a) (duty to provide competent representation), 1.3 (duty to act with diligence), 3.2 (duty to expedite litigation), 3.4(c), 8.1(c), 8.4(a), 8.4(d) (conduct prejudicial to the administration of justice) and 8.4(g).
In the Henry/Ortego matter, the ODC alleged respondent’s actions violated Rules 1.3, 1.4 (duty to communicate with client), 1.15(a), 1.15(b), 1.16(d) (duty to protect client’s interest upon termination of representation), 8.4(a), 8.4(c), and 8.4(d). Further, the ODC alleged that respondent failed to cooperate in its investigation, in violation of Rules 3.4(c), 8.1(a) and 8.1(c).
In the Guidry matter (02-DB-021), the ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6) (payment of fees in advance of services), 1.15(c), 1.16(a) (failure to withdraw from the representation of a client upon being discharged), 1.16(d), 8.4(a) and 8.4(c). In addition, because respondent failed to respond to the ODC’s requests for information, he was found to have violated Louisiana Supreme Court Rule XIX, Section 9(c) and Rules 3.2, 8.1(c), 8.4(a) and 8.4(g).
In the Mitchell matter (02-DB-021), the ODC alleged that respondent violated Rules 1.1(a), 1.3, 1.4, 1.16, 3.2, 3.4, 8.4(a) and 8.4(d). Further, because respondent | ^failed to cooperate with the ODC’s investigation, the ODC alleged that he violated Rules 8.1(c), 8.4(a) and 8.4(g).
In the Edwards matter (02-DB-061), the ODC alleged that respondent’s conduct violated Rules: 1.3, 1.4, 1.15, 1.16(a), 1.16(d), 8.4(a), 8.4(c) and 8.4(d).

Recommendations of the Hearing Committees

The formal charges against respondent were heard by four separate hearing committees.
00-DB-092 c/w 00-DB-120
The Richard matter (00-DB-092) and Domingeaux matter (00-DB-120) were consolidated for hearing before a single committee. The parties stipulated to the facts of both matters. Based on the stipulations, the hearing committee determined there was clear and convincing evidence that respondent violated the professional rules.
Specifically, in the Richard matter, the committee found respondent’s failure to pay court costs as' he agreed violated Rule 8.4. In addition to the rule violations included in the formal charges, the committee also determined that respondent’s failure to withhold the proper amount from *64 the client’s settlement to cover the court costs violated Rule 1.15 (safekeeping of property). In addition, respondent’s failure to deliver a copy of the signed judgment to Mr. Roy burdened and delayed Mr. Roy’s ability to terminate the lawsuit in violation of Rule 4.4 (rights of third persons).
With regard to the Domingeaux matter, the committee found that respondent’s conduct in tendering a check to the hospital without sufficient funds in his trust account violated Rules 1.15(a), 1.15(b), 4.1(a), 4.1(b), 4.4, 8.4(a), 8.4(c) and 8.4(d). The committee further determined that respondent’s complete failure to respond to the h ¡¡initial complaint, and failure to comply with the ODC’s subpoena requesting financial records and other documents was in violation of Louisiana Supreme Court Rule XIX, Section 9(a) and (c) and Rules 3.4(c), 8.1(c), 8.4(a) and 8.4(g).
The committee found that respondent’s misconduct caused actual injury. In the Richard matter, the committee found Mr. Roy had to wait over a year before obtaining a satisfactory dismissal of the lawsuit against Audubon and its insured. Further, Audubon ultimately paid nearly $300.00 in court costs despite respondent’s agreement that his client would be responsible for these costs. In the Domingeaux matter, the committee found Opelousas General was deprived of its funds for a lengthy period. In addition, respondent’s client was exposed to potential injury because his credit rating may have been affected due to the outstanding hospital bill.
As aggravating factors, the committee found respondent had substantial experience in the practice of law, having been admitted to the bar in 1987, and did not display any remorse for his actions. In mitigation, it recognized no specific intent to harm, lack of selfish motive, and personal problems.[8]
The committee recommended that respondent be suspended from the practice of law for a period of six months with three months deferred. It further recommended that respondent be placed on supervised probation for a period of one year subject to certain conditions.[9]
I ia01-DB-057 c/w 01-DB-073
The Vallare matter (01-DB-057) and the Henry/Ortego matters (01-DB-073) were consolidated for hearing. The charges against respondent were deemed admitted in light of respondent’s failure to answer the formal charges.
In the Vallare matter, the committee determined that respondent failed to comply with court orders and failed to appear for a show cause hearing. Respondent also failed to advise his client that he violated court orders. The committee found respondent’s actions violated Rules 1.1(a),1.3,1.4, 3.4(c) and 8.4(d).
*65 In the Henry/Ortego matter, the committee determined respondent failed to withhold and/or remit personal injury settlement funds to Ortego in numerous cases and owed approximately $7,000.00. The committee found that respondent’s conduct violated Rules 1.15(b), 4.3, 8.4(a) and 8.4(c). In addition, because respondent failed to answer the complaints, the formal charges or otherwise assist in the ODC’s investigation, the committee found that he violated Rules 3.4(c) and 8.1(c). However, the committee rejected the ODC’s contention that respondent’s failure to safeguard funds due to Ortego constituted conversion of funds. The committee found no evidence that respondent converted funds for his own use; rather, it concluded respondent exercised poor judgment by disbursing settlement proceeds to clients without withholding amounts due to the clinic.
As aggravating factors, the committée found respondent had a prior disciplinary record consisting of two prior admonitions. In mitigation, the committee observed respondent made partial restitution by paying a portion of the amount due to Ortego.
| uUnder these circumstances, the committee recommended that respondent be suspended from the practice of law for one year and one day.
02-DB-021
This hearing encompassed the Guidry and Mitchell matters. Respondent filed an answer to the ODC’s formal charges in this matter. Accordingly, the matter proceeded to a formal hearing.
In the Guidry matter, the committee determined respondent failed to act with reasonable diligence- and promptness in representing Mr. Guidry. It found respondent failed to account for his fee and failed to refund the unearned portion. Additionally, it found respondent failed to cooperate with the ODC. Based on these findings, the committee found that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6), 1.15(c), 1.16(a), 1.16(d), 3.2, 8.1(c), 8.4(a), 8.4(c), 8.4(g) and Louisiana Supreme Court Rule XIX, Section 9(c).
In the Mitchell matter, the committee found respondent’s failure to appear for the pre-trial conference and failure to timely appear for the contempt rule before Judge Methvin do not, standing alone, constitute violations of the Rules of Professional Conduct. Therefore, the committee found the evidence presented on these charges is insufficient to establish by clear and convincing evidence any violation of Rules 1.1(a), 1.3, 1.4, 1.16, 3.2, 3.4, 8.4(a) and 8.4(d). However, the committee found that respondent violated Rules 3.2, 8.1(c), 8.4(a) and 8.4(g) and Louisiana Supreme Court Rule XIX, Section 9(c) due to his failure to cooperate with the ODC.
The committee recognized the aggravating factors of prior discipline, substantial experience in the practice of law, refusal to cooperate with the ODC’s investigation, knowing violation of duties to clients, courts, and the profession, vulnerability of the |1Rclients, substance abuse, and most significantly, chronic, pattern of misconduct. The committee recognized no mitigating factors.[10]
Based on these findings, the committee recommended .that respondent be disbarred.
02-DB-061
This hearing encompassed the charges in the Edwards matter. Respondent *66 failed to file an answer to these charges. As a result, the charges were deemed admitted.
The committee found respondent had knowledge of and personally guaranteed the medical lien. Respondent failed to deposit settlement funds into his trust account, failed to account for funds marked specifically for medical expenses, and failed to pay the lien upon receiving the settlement funds from State Farm. Respondent admitted to commingling and conversion. Respondent did not make any payments to Dr. Lee until nearly two years after he settled the Edwards case, and then only after Dr. Lee filed a complaint with the ODC. Respondent still owes Dr. Lee $535.50.
The committee determined that respondent violated Rules 1.3, 1.4,1.5, 1.16(a), I.16(d),8.4(a), 8.4(c) and 8.4(d). After considering the ABA’s Standards for Imposing Lawyer Sanctions and relevant jurisprudence,[11] the committee determined the baseline sanction for respondent’s misconduct is disbarment. The committee | ^recognized the aggravating factors of prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct and multiple offenses. In mitigation, the committee recognized that respondent faced personal and emotional problems.
Based on these circumstances, the committee recommended that respondent be disbarred.

Recommendation of the Disciplinary Board

Before the disciplinary board, the ODC moved to consolidate all of the charges pending against respondent into a single proceeding. The disciplinary board granted the motion to consolidate and considered all of the charges together.
In the Richard matter (00-DB-092), the board agreed with the committee’s finding respondent violated Rules 8.4(a), 8.4(c) and 8.4(d). However, the board found that the committee erred in finding violations of Rules 1.15 and 4.4 in the Richard matter, noting these rule violations were not alleged in the formal charges and could not be considered a lesser included charge.[12]
In the Domingeaux matter (00-DB-120), the board accepted the committee’s finding that respondent violated Rules 1.5(a), 1.5(b), 3.4(c), 8.1(c), 8.4(a), 8.4(c) and 8.4(g). However, as in the Richard matter, the board rejected the committee’s finding of a violation of Rules 4.1(a), 4.1(b), 4.4 and 8.4(d), on the ground the ODC did not charge a violation of these rules.
In the Vallare matter (01-DB-057), the board found the record supported the committee’s conclusions that respondent’s conduct violated Rules 1.1(a), 1.3, 1.4. |173.4(c) and 8.4(d). However, the board found the committee erred in failing to find additional violations. Specifically, the board found *67 that respondent’s delay in submitting his portion of the joint status report constituted a Rule 3.2 violation (failure to expedite litigation). The board also found that respondent’s failure to assist in the ODC’s investigation constituted a Rule 8.4(g) violation. Finally, the board found a Rule 8.4(a) violation because respondent violated other rules.
In the Henry matter (01-DB-073), the board determined the record clearly supported the committee’s finding that respondent violated Rules 1.1(a), 1.3, 1.4, 3.4(c) and 8.4(d). However, the board made additional factual findings that respondent failed to withhold settlement funds from Ms. Henry’s settlement and make payment to Ortego, despite his assurance to her that he did so. As a result, the board found respondent also violated Rules 1.4,1.15(b), 1.16(d) and 8.1(a).
In the Ortego matter (01-DB-073), the board agreed with the committee’s determination that respondent violated Rules 1.3, 1.15(b), 8.4(a) and 8.4(c). In addition, the board found that respondent’s failure to pay the amount due to Ortego violated Rule 1.15(a), because he failed to hold property of a client or third person separate from his own property. Also, respondent’s failure to pay the balance due to Ortego constituted a violation of Rule 1.16(d), (because he failed to protect client’s interests upon termination of representation). The board agreed with the committee’s determination that it does not appear that respondent violated Rule 8.4(d)(conduct prejudicial to the administration of justice).
The board also agreed with the committee that respondent violated Rule 3.4(c) when he failed to cooperate in the ODC’s investigations of the Henry/Ortego matters. Further, it determined the committee properly declined to find a Rule 8.1(a) violation |isbecause there was insufficient evidence to show that respondent made false statements of fact during the disciplinary proceedings.
In the Guidry matter (02-DB-021), the board found that the committee’s findings of fact were not manifestly erroneous. The board stated that the record amply supports the committee’s conclusion that respondent “absolutely failed to act with reasonable diligence and promptness in representing Mr. Guidry.” The board agreed with the committee’s application of the rules, with one minor modification.
In the Edwards matter (02-DB-061), the board found the record supported the conclusion that respondent failed to protect a third party’s interest in settlement proceeds, commingled and converted funds, failed to maintain a trust account and failed to keep his client advised of the status of the case. Accordingly, the board found that respondent violated Rules 1.3, 1.4, 1.15, 1.16(a), 1.16(d), 8.4(a), 8.4(c) and 8.4(d).
Considering the record, the board found respondent knowingly violated duties to his clients when he failed to diligently pursue their claims, failed to keep them advised and failed to preserve property entrusted to him. Respondent violated duties to the legal system when he failed to comply with court orders and when he made misrepresentations during settlement negotiations. Respondent violated duties to the profession when he failed to cooperate in the ODC’s investigation.
The board found that respondent’s misconduct resulted in serious injury to his clients, the legal system and the profession. As aggravating factors, the board recognized prior disciplinary offenses, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings, vulnerability of the victim and substantial experience in the practice of *68 law. The board found the sole mitigating factor to be partial restitution.
|19The board concluded that respondent has demonstrated a callous disregard for the standards of the legal profession and the legal system. Based on these findings, the board recommended that respondent be disbarred.
Neither respondent nor the ODC has objected to the recommendation of the disciplinary board.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our review, we conclude the record supports the findings of the hearing committees, as modified by the disciplinary board, that respondent has engaged in persistent and serious professional misconduct. The evidence overwhelmingly supports the conclusion that respondent knowingly and intentionally failed to communicate with his clients, neglected his clients’ legal matters, abandoned his clients, failed to respond to his clients’ requests for information, failed to expedite his clients’ litigation, failed to account for or refund unearned fees, failed to return his clients’ files, failed to withhold sums from clients’ settlements and/or remit payment Lnto third parties, made misrepresentations during settlement negotiations, and failed to cooperate with the ODC.
Having found professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s misconduct. In determining the appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s actions caused actual harm to his clients, third parties and the legal system. In addition to disregarding his responsibilities to his clients and third parties, he has repeatedly ignored orders of courts. Numerous aggravating factors are present, including prior disciplinary offenses, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process by failing to comply with the disciplinary rules, vulnerability of the victims, and substantial experience in the practice of law. The sole mitigating factor is that respondent made partial restitution by making some payments to the chiropractic clinics he owed.
We find respondent’s actions taken as a whole demonstrate he has little regard for the welfare of his client or his responsibilities as a member of the bar. The sheer volume of misconduct presented in this *69 case reveals that respondent lacks the fitness necessary to practice law in Louisiana.
Accordingly, we must disbar respondent from the practice of law.
| ^DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Joshua G. Frank, Jr., Louisiana Bar Roll No. 18221, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked, retroactive to his December 14, 2001 interim suspension. Respondent is ordered to provide complete accountings and full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In re: Frank, 01-2855 (La.12/14/01), 803 So.2d 970.

. Ms. Henry had authorized her prior attorney, Barry Fontenot, to settle her case for at least $4,000.00. Apparently, Mr. Fontenot relocated out of town and referred Ms. Henry's case to respondent to handle the settlement disbursement.

. Respondent later asserted that he attempted to return the file through a third party.

. Respondent testified that instead of entering "pre-trial conference” on his calendar, his secretary entered "trial.” Respondent met with his client the night before the date of the pre-trial conference and they both agreed that the trial was not the next day, but approximately two weeks later. Respondent concluded his secretary mis-calendared the date and he therefore did not go to court or call in for the pre-trial conference.

. Respondent did arrive and report to the judge’s chambers after the hearing had already concluded and presented a note from Judge Aaron McGee, 27th Judicial District Court, stating that he had been in his court that afternoon for jury selection. Judge Methvin stated that she had no reason to question the authenticity of the note, but it did not negate respondent’s failure to participate in the telephone conference or his failure to contact the court in a timely manner to report a scheduling conflict.

.According to the assistant U.S. attorney, defendant contacted him and expressed interest in a plea bargain but stated he had been unsuccessful in contacting respondent. The assistant U.S. attorney informed defendant that he could not discuss the case with him *62 because defendant was represented by counsel, but stated that he already sent a plea package to respondent. Respondent testified in his deposition that he did not bother to reply to the assistant U.S. attorney or to convey the plea package to his client because the offer was ''ridiculous” and an "insult.”

. Based on respondent’s history of contempt orders and information adduced at the hearing indicating that respondent was not adequately representing Mr. Mitchell, Judge Methvin ordered that he be terminated as counsel for Mr. Mitchell. The Office of Federal Public Defender was thereafter appointed to represent the defendant. Judge Methvin also recommended that respondent be suspended from the practice of law in the United States District Court for the Western District.

. The committee acknowledged respondent claimed he was abusing drugs and alcohol during the time of the misconduct. However, the committee noted that the only evidence respondent submitted regarding his alleged substance abuse was a letter dated May 9, 2000 addressed "To Whom It May Concern” and signed by Byron Thevenote, Director of Rainbow House Detox in Pineville. The letter indicated that respondent was enrolled in a 35-day program at the facility and that upon completion, the facility might recommend continued care at another facility.

. The committee recommended the following conditions:
1. He make restitution to Audubon Insurance Group in the amount of $284.50;
2. His trust account(s) be audited by an independent certified public accountant at his expense; and
3. That a practice monitor be appointed to periodically review his files to determine if payment is owed to third party healthcare providers.

. Respondent offered his cocaine addiction and efforts at rehabilitation in mitigation. The committee instead found this to be an aggravating factor and also commented that respondents testimony is not persuasive that he accepts complete responsibility for his misconduct.

. For guidance, the committee relied on In re: Schambach, 01-2375 (La.9/13/02), 826 So.2d 539, and In re: Carter, 02-2066 (La.10/14/02), 829 So.2d 1023. In In re: Schambach, respondent violated Rules 1.3, 1.4, 1.5 and 8.4. He had a prior disciplinary record, dishonest and selfish motive, a pattern of misconduct, multiple offenses and other aggravating factors. This court disbarred respondent. In In re: Carter, respondent violated Rules 1.4, 1.15, 8.4. Aggravating factors included selfish or dishonest motive and substantial experience in the practice of law. Respondent was disbarred.

. In support, the board cited Louisiana State Bar Ass’n v. Keys, 567 So.2d 588 (La.1990)(due process prohibits sanctioning an attorney for unrelated misconduct revealed by evidence in the disciplinary proceeding when the attorney has not been notified that the uncharged violations would be considered as disciplinary offenses or that he should be prepared to present a defense as to that misconduct).