ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Robert M. Romero, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.
FORMAL CHARGES
The ODC filed two sets of formal charges against respondent. The first set of formal charges, consisting of four counts and bearing the disciplinary board’s docket number 03-DB-008, was filed on January 29, 2003. The second .set -of formal charges, consisting of one count and bearing the disciplinary board’s docket number 03-DB-072, was filed on October 20, 2003. After the first set of formal charges was considered by a hearing committee, the two sets of formal charges were consolidated by order dated January 19, 2004. The consolidated matters were then considered by a second hearing committee, which recommended a single sanction for the misconduct charged in both sets of formal *820 charges. On December 15, 2004, the disciplinary board filed in this court a single recommendation of discipline encompassing both sets of formal charges.

UPS-DB-008

Count I — The Benoit Matter
In December 2000, Mary Ann Benoit retained respondent to handle her father’s succession. When months went by and she had not heard from respondent, Ms. Benoit discharged him by letter dated June 26, 2001. Ms. Benoit later learned that respondent filed the pleadings to open the succession on July 31, 2001, after Ms. Benoit had retained new counsel.
In August 2001, Ms. Benoit filed a complaint against respondent with the ODC. During a sworn statement in June 2002, respondent assured the ODC that he would attempt to resolve the complaint with Ms. Benoit. However, during a second sworn statement in September 2002, respondent indicated that he had not contacted Ms. Benoit regarding the matter.
The ODC alleged respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client) and 1.4 (failure to communicate with a client).
Count II — The Spell Matter
In August 2001, Charles Spell retained respondent to handle his divorce and paid him an initial retainer of $250. Thereafter, respondent would not return Mr. Spell’s phone calls or otherwise communicate with him. Respondent also did not file his client’s divorce petition. As such, Mr. Spell discharged respondent and hired a new attorney.
In January 2002, Mr. Spell filed a complaint against respondent with the ODC. During a sworn statement in June 2002, respondent assured the ODC that he would attempt to resolve the complaint with Mr. Spell. However, during a second sworn |3statement in September 2002, respondent indicated that he had not contacted Mr. Spell regarding the matter.
The ODC alleged respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.3, 1.4, and 1.16(d) (failure to refund an unearned fee upon termination of the representation).
Count III — The Derouen Matter
In February 2000, Essie Mae Derouen retained respondent to handle her mother’s succession. After more than a year with little communication from respondent, the succession pleadings still had not been filed, although they were complete.
In February 2002, Ms. Derouen filed a complaint against respondent with the ODC. During a sworn statement in June 2002, respondent assured the ODC that he would attempt to resolve the complaint with Ms. Derouen. However, during a second sworn statement in September 2002, respondent indicated that he had not contacted Ms. Derouen regarding the matter.
The ODC alleged respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.3 and 1.4.
Count TV — The Lemaire Matter
In February 2002, Troy Lemaire retained respondent to handle a custody matter. After several months with no communication from respondent, Mr. Le-maire discovered that respondent had closed his law office.
In May 2002, Mr. Lemaire filed a complaint against respondent with the ODC. During a sworn statement in June 2002, respondent assured the ODC he would | ¿attempt to resolve the complaint with Mr. Lemaire. However, during a second sworn statement in September 2002, re *821 spondent indicated that he had not contacted Mr. Lemaire regarding the matter.
The ODC alleged respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.3 and 1.4.

03-DB-072

The Ramos Matter

Sandra St. Germain Ramos retained respondent to defend her in a criminal matter involving a charge of issuing worthless checks. In February 2001, the court placed Ms. Ramos on probation and ordered her to pay restitution to the victim. At respondent’s suggestion, Ms. Ramos paid him the restitution, which he in turn agreed to forward to the district attorney’s office on Ms. Ramos’s behalf. However, respondent did not have a client trust account at this time and thus commingled the restitution funds with his own funds. Furthermore, respondent failed to forward any of the funds to the district attorney’s office on behalf of Ms. Ramos and did not account to his client for the funds.[1]
In August 2002, Ms. Ramos filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third ^persons), 1.15(d) (failure to maintain a client trust account), 8.1(c) (failure to cooperate with the ODC in its investigation) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
DISCIPLINARY PROCEEDINGS
Respondent was served with both sets of formal charges. He failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). - No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration in either matter.

Hearing Committee Recommendations

03-DB-008

Based on the deemed admitted facts, the hearing committee found that respondent violated Rules 1.3, 1.4, and 1.16(d) of the Rules of Professional Conduct. The committee found that in each matter, respondent failed to do what he was hired to do and also failed to communicate with his clients. Specifically, in the Benoit matter, respondent’s services had been terminated for more than one month when he finally filed the succession. Respondent also failed to file Mr. Spell’s divorce and failed to refund the $250 fee to Mr. Spell. In the Derouen matter, the succession pleadings had not been filed more than a year after Ms. Derouen hired respondent, and in the Lemaire matter, respondent simply failed to handle his client’s custody case.
LThe committee determined that respondent knowingly violated duties owed *822 to his clients and the legal profession. Therefore, according to the ABA’s Standards for Imposing Lawyer Sanctions, the appropriate baseline sanction is a period of suspension.
As aggravating factors, the committee recognized respondent’s prior disciplinary offenses,[2] a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1975). No mitigating factors were found by the committee.
Considering the above findings, the committee recommended that respondent be suspended from the practice of law for one year and one day. The committee also recommended that respondent be ordered to reimburse Mr. Spell’s $250 fee.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

03-DB-008 & 03-DB-072

Based on the deemed admitted facts in 03-DB-072, the hearing committee determined that respondent violated Rules 1.15(a), 1.15(d), 8.1(c), and 8.4(c) of the Rules of Professional Conduct. The committee found that respondent took funds from Ms. Ramos in a fiduciary capacity and converted those funds to his own use, which was considered to be grievous misconduct involving dishonesty, fraud, deceit, |7and misrepresentation. Furthermore, respondent failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Ramos and failed to participate in the disciplinary proceedings.
Based on these findings, and considering the record in 03-DB-008, the committee recommended that respondent be suspended from the practice of law for three years for the misconduct charged in both sets of formal charges. The committee also recommended that respondent be required to make restitution to Mr. Spell of $250 and to Ms. Ramos of $1,950.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.[3]

Disciplinary Board Recommendation

Accepting the deemed admitted facts as set forth in the formal charges, the disciplinary board agreed that respondent violated the Rules of Professional Conduct as charged. The board determined that respondent neglected the Benoit, Spell, Der-ouen, and Lemaire legal matters, and failed to communicate with these clients or otherwise keep them informed after several attempts were made to contact him. Because of respondent’s conduct, Ms. Be-noit and Mr. Spell had to engage other counsel. Furthermore, after his termination, respondent failed to provide Mr. Spell with an accounting or refund of unearned fees. Finally, respondent received money from Ms. Ramos meant to be paid *823 as restitution on her behalf but placed it in his operating account, instead of a trust account, and did not use it for its intended purpose. He also failed to refund this money to Ms. Ramos and did not cooperate during the ODC’s investigation of her complaint.
IsBased on these findings, the board determined that respondent violated duties owed to his clients, the public, and as a professional. His conduct was knowing and caused actual harm to his clients. His actions and inactions delayed the administration of justice and jeopardized his clients’ legal matters. The successions in the Benoit and Derouen matters were substantially delayed. Mr. Spell paid respondent $250 and had to hire other counsel without receiving a refund. The custody of Mr. Lemaire’s daughter languished, and respondent’s failure to use Ms. Ramos’s funds to pay her restitution left her with a felony conviction for writing worthless checks.
The board found the following aggravating factors are present: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, substantial experience in the practice of law, and indifference to making restitution. The board found no evidence of any mitigating factors.
Considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction for respondent’s misconduct is a suspension from the practice of law. However, the board found that an upward deviation is appropriate in this case in light of the aggravating factors present, and recommended respondent be disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation, but on our own motion, we ordered the parties to submit briefs addressing the issue of an appropriate sanction.
^DISCUSSION
The deemed admitted facts in this case establish that respondent has violated the ■ Rules of Professional Conduct as charged in both sets of formal charges. Therefore, the sole issue presented for our consideration is the appropriate sanction for respondent’s misconduct.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In the first set of formal charges, respondent is guilty of neglecting the legal matters of four clients and failing to communicate with these clients, and in one instance, failing to account for a $250 legal fee. In the second set of formal charges, respondent did not maintain a client trust account, converted less than $2,000 in client funds, and failed to cooperate with the ODC in its investigation. This conduct was knowing and caused harm to respondent’s clients. The applicable baseline sanction is a suspension from the practice of law.
While the disciplinary board readily acknowledged the baseline sanction of sus *824 pension, it nonetheless recommended an upward deviation to disbarment, citing as authority our prior decisions in In re: Collinsworth, 04-0167 (La.6/25/04), 877 So.2d 967; In re: Frank, 04-0238 (La.6/25/04), 876 So.2d 57; and In re: Pinkston, 02-3251, 02-3252 (La.5/20/03), 852 So.2d 966. While we have, in appropriate circumstances, disbarred attorneys who violate Rules 1.3, 1.4, 1.16, 8.1, and 8.4, a [incursory review of the cited cases demonstrates they are in no way similar to respondent’s.[4] Rather than relying on Collinsworth, Frank, and Pinkston to support the imposition of disbarment in this case, we find the three-year suspension recommended by the hearing committee is more responsive to the facts and yet is mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession.
Accordingly, we will reject the disciplinary board’s recommendation and suspend respondent from the practice of law for three years.
DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that Robert Mark Romero, Louisiana Bar Roll number 11440, be and he hereby is suspended from the practice of law for a period of three years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, luwith legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, J., dissents and would impose a two-year suspension.
TRAYLOR, J., dissents and. would disbar.

. With her complaint, Ms. Ramos included copies of six checks she wrote to respondent totaling $1,950. It appears that at least some of this amount represented respondent’s attorney’s fees, and as such, it may not have been intended that the entire amount would be applied to Ms. Ramos's restitution obligation. Moreover, we note that the court order Ms. Ramos attached to her complaint set restitution at $6,060, but there is no evidence that Ms. Ramos paid respondent that sum. In any event, Ms. Ramos claimed in her complaint that as a result of respondent’s failure to pay her restitution, she "was taken back to court & convicted of worthless checks felon [sic]."

. In September 1989, respondent was publicly reprimanded by the Committee on Professional Responsibility of the Louisiana State Bar Association for misconduct including neglect of a legal matter, failure to communicate with a client, and attempting to settle his malpractice liability without informing the client of his right to be represented by independent counsel. In April 1994, respondent was admonished by the disciplinary board for communicating with a person represented by counsel, failing to properly supervise non-lawyer assistants, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. In September 1994, respondent was admonished for failing to cooperate with the ODC in a disciplinary investigation. Finally, in March 1995, respondent was admonished for neglecting a legal matter, failing to refund unused costs to his client, and failing to cooperate with the ODC in its investigation.

. Respondent wrote a letter to the disciplinary board waiving his appearance before the board and indicating his acceptance of the hearing committee's recommendation of a three-year suspension.

., The attorney in Collinsworth was disbarred in 2001 for stealing from his law firm; he was not disbarred in the 2004 case cited by the board. Rather, the misconduct at issue in that case (neglect of a single legal matter, failure to communicate with a client, failure to promptly refund an unearned legal fee, and failure to cooperate with the ODC) was simply added to Collinsworth’s record for consideration in the event he applied for readmission to the practice of law. The attorney in Frank was the subject of six separate sets of formal charges; he was found to have committed what we called "persistent and serious professional misconduct” by knowingly and intentionally failing to communicate with his clients, neglecting his clients' legal matters, abandoning his clients, failing to respond to his clients’ requests for information, failing to expedite his clients' litigation, failing to account for or refund unearned fees, failing to return his clients' files, failing to withhold sums from clients’ settlements and/or remit payment to third parties, making misrepresentations during settlement negotiations, and failing to cooperate with the ODC. Finally, the attorney in Pinlcston was permanently disbarred for making false statements to a court and concealing evidence from the court which he should have revealed; the remaining misconduct charged in the formal charges (a pattern of neglect of legal matters, failure to promptly provide accountings and failure to return unearned fees) paled in comparison and warranted only brief mention in our opinion.