772 So.2d 845 (2000)
STATE of Louisiana
v.
Roy J. DICKERSON.
No. 00-KA-951.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2000.
*846 J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, Louisiana, Attorney for Appellant Roy J. Dickerson.
Paul D. Connick, Jr., District Attorney, 24th Judicial District Parish of Jefferson, State of Louisiana, Rebecca J. Becker, Attorney of Record on Appeal, Terry Boudreaux, Appellate Counsel, Richard R. Pickens, II, Trial Counsel, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS, JJ., and H. CHARLES GAUDIN, J. Pro Tem.
CANNELLA, Judge.
Defendant, Roy Dickerson, appeals from his conviction of aggravated arson of a structure. We affirm the conviction and sentence.
On May 20, 1999, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with one count of aggravated arson of a home belonging to Patsy Darensburg, in violation of La. R.S. 14:51, and a second count of aggravated arson of furniture belonging to Wanda Robinson, in violation of La. R.S. 14:51. He pled not guilty. Various motions were filed, including a motion to suppress, which was denied, and a notice of intent to use other crimes' evidence. A Prieur hearing relative to the other crimes evidence was held on August 25, 1999 and September 1, 1999.[1] The motion by the State to use the other crimes evidence was granted. The Defendant filed a writ application in this Court on the issue, which was denied.
On September 8, 1999, the State amended count one to aggravated arson of a structure and dismissed count two. Trial was held on September 14th and 15th, 1999 after which a jury found the Defendant guilty as charged.
On September 20, 1999, the State filed a habitual offender bill of information alleging the Defendant to be a third felony offender. On October 6, 1999, a hearing was held, after which, the trial judge found the Defendant to be a third felony offender, designated the arson conviction as a crime of violence and sentenced the Defendant to life imprisonment, without benefit of parole, probation, or suspension of sentence, with credit for time served.
On appeal, the Defendant contends that the trial judge erred in admitting into evidence an accusation of an unadjudicated act of arson and that the admission was more prejudicial than probative.
The State alleged that on March 29, 1999, at approximately 12:15 a.m., the Defendant threw a homemade gas-bomb (Molotov cocktail) through the dining room window of a neighbor, Wanda Robinson (Robinson), causing a fire at her residence at 533 Emile Avenue, Westwego, Louisiana. Robinson lived at that address with her two children, ages ten and sixteen. The Defendant lived several houses away from Robinson.
Robinson testified that she met the Defendant during Thanksgiving of 1998. Robinson socialized with the Defendant, but did not date him. He frequently visited with her at her house where they watched movies. The Defendant cut Robinson's *847 grass and performed other odd jobs around her house. The Defendant occasionally visited and left Robinson's house at late hours.
At some point, Robinson decided to end all contact with the Defendant. When she told him of her intentions, the Defendant became very emotional. He began threatening her, calling her constantly on the telephone, hanging up, and making nasty remarks when she left her house. He also left telephone messages for Leroy Busby (Busby), Robinson's fiancee, at Busby's house and called him at work.
On the afternoon of March 29, 1999, Robinson went into front yard to go to her garbage can. Robinson testified that the Defendant was standing across the street. When he saw her, he stated, "Bitch, you are going to get off this street, because I'm going to burn you down." Robinson ignored him, went back inside, locked the door, and told her two children that if they heard a noise to let her know, because Defendant said he was going to "burn them down."
That evening, Robinson drove to the Defendant's house to talk to the Defendant's son, Eric Thomas (Thomas). She wanted Thomas to ask the Defendant to stop threatening her. The Defendant was present and while they were talking, the Defendant got upset. Busby also went to the Defendant's house when he saw Robinson's car parked there. When Busby arrived, Robinson told him not to come into the house, because the Defendant was in a rage. The Defendant then begged Busby to come into the house because he said he wanted to talk to Busby about some things Busby needed to know about Robinson. Busby then entered into the house only because Defendant begged him. During the discussion, Busby tried to find out how the Defendant obtained Busby's work number and why the Defendant was calling Busby's house and leaving him messages.
Robinson testified that the Defendant indicated that he wanted to "attack" Busby. At this point, the Defendant, Busby, Robinson, and Thomas were in the front yard. Robinson told Busby that it was time for them to leave, but the Defendant pushed Busby and tried to close the car door on Busby's leg. Thomas intervened, telling the Defendant to leave Busby alone. Robinson and Busby then got into their vehicles and started to drive home. However, the Defendant started running down the street with no shoes on, screaming and hollering, and saying he wanted to talk to Busby, and that he had no weapons on him. Robinson told Busby that they should go inside of her home because she did not trust the Defendant. She also testified that the Defendant stated, "I'm going to show y'all something." Twenty minutes later, she heard a loud noise in the house and when they came out of the bedroom, the front area of her house was on fire. Although Robinson, her two children, and her fiancee were in the house at the time of the fire, no one was injured. The fire burned the drapes and two dining room tables.
Robinson testified that she started having problems with the Defendant two weeks before the fire. However, she never called the police and did not attempt to get a restraining order against him.
Alicia Johnson (Johnson), testified that on March 29, 1999, the Defendant was living with her, Thomas, and her children. She stated that on the night of the fire, she and the Defendant got into an argument. The Defendant was angry with her for going to Robinson's house to buy dinner for her and Thomas. The Defendant thought that Johnson was taking Robinson's side in his dispute with Robinson. The conversation got out of hand, so she asked the Defendant to leave her house and she took the keys from him. He left, but came back later, asking to stay for the night. Johnson refused at first, then relented because she did not want him to be on the streets. Thomas then came home, *848 and he and Johnson discussed the situation.
Johnson testified that after her argument with the Defendant, Robinson came to her house to talk to her and Thomas about the problems she was having with the Defendant. Busby arrived later. Johnson said that the conversation "got out of hand." (R., p. 165). As Busby was leaving her home, the Defendant walked up to Busby's car and pushed the door. Johnson testified that Busby responded by drawing his gun. Thomas and Robinson witnessed this as well. After Busby pulled his gun, the Defendant walked away, but he did not go inside the house. Busby and Robinson then drove home. Johnson stated that Busby was not there to cause trouble, nor did he do anything to provoke the Defendant.
About twenty minutes later, the Defendant left the house heading in the direction of Robinson's house. Johnson asked Thomas to get the Defendant so he would not cause any trouble. Thomas told Johnson that the two men had a conversation in the car on the way back to the house. Then Thomas went into the bedroom. According to Johnson, the Defendant left the house about fifteen minutes later, but returned within approximately two or three minutes. She said that the Defendant went out of the house a third time, returning in approximately ten minutes. A few minutes later, she received a telephone call from Robinson telling her that her house was on fire. Johnson and Thomas went to Robinson's assistance, leaving the Defendant in the house.
After talking to police officers at the scene of the fire, a police officer returned home with Johnson and Thomas. When they entered the kitchen, Johnson saw the Defendant standing over the kitchen counter washing his hand with bleach. Johnson also noticed that a Pat O'Brien's glass which had been on her counter was missing. Johnson concluded by stating that before this incident, she had no problems with the Defendant.
Thomas testified that when Robinson came over to the house to talk about her problems with his father, Busby arrived and said that the Defendant was calling Busby's office and leaving messages for Busby to call him. After Robinson and Busby left, the Defendant headed down the street behind them. Thomas went after him and brought the Defendant back in the car. Thomas testified that, in the car, the Defendant told him, "I'll set this m fon fire."
When they got home, the two of them talked and then Thomas got ready for bed. Thomas and Johnson then heard the house alarm go off signifying that the door to the outside had been opened. The Defendant went out for a minute and returned. The door then opened a second time. Thomas said the Defendant went out again, returning no more than a minute later. Thomas did not see the Defendant exit or enter the home during that time.
About twenty minutes later, Robinson called to tell them that her house was on fire. When Thomas and Johnson left to go to Robinson's house, the Defendant remained at home. At the fire scene, Johnson and Thomas met with police officers, who returned with Thomas and Johnson to their house. When they entered the kitchen, Thomas saw the Defendant standing over the sink washing his hands. He did not see him pour bleach onto his hands, but he smelled the chemical. Thomas said that the smell was not present in the house before they left to go to the fire scene. Thomas also saw matches and a sock on the table when they returned home. He stated that the matches and the sock were not on the table when he and Johnson left to go to Robinson's home. In addition, Johnson told Thomas that her Pat O'Brien's glass was missing. Thomas last saw the Pat O'Brien's glass earlier on the day of the incident. Thomas testified that the Defendant has a missing finger and limited capacity in his left hand due to an injury.
*849 Deputy Eugene Chaisson, a Jefferson Parish Sheriff's Office (JPSO) patrolman, testified that he responded to the fire. At the scene, he spoke to Robinson. After going to the Thomas and Johnson home with the couple, he collected a sock and matches from the kitchen table. The sock appeared to match the burnt sock found at the fire scene, which involved in the arson investigation. He identified the sock and matches in a photograph. Patrolman Chaisson also identified a photograph of the kitchen showing a bottle of bleach, which the Patrolman considered significant because the Defendant's son advised him that his father had washed his hands with bleach. Patrolman Chaisson identified a gas can obtained from the laundry room in the Thomas house that contained approximately a couple of inches or½ gallon of gasoline. He testified that it is unusual to find gasoline in a wash area because of the clothing and other combustible materials. The Patrolman also identified a broken Pat O'Brien's glass that was found in the fire debris. Patrolman Chaisson took statements from Thomas and Johnson, which they both signed.
Patrolman Chaisson stated that the Defendant was initially detained because he was a possible suspect. He was released when they discovered that there were no witnesses. As the investigation proceeded, the burned sock and pieces of a Pat O'Brien's glass were recovered from the scene of the fire. Then the Defendant's son informed the police officers that a similar sock and matches were on the table when he arrived home after the fire, but were not there before he left. In addition, the investigation further disclosed that Johnson owned a Pat O'Brien's glass that had been on the Thomas' and Johnson's kitchen table earlier, but was missing when the couple returned to the house. As a result, approximately an hour after the police began investigating the fire, the Defendant was arrested by Patrolman Chaisson.
Thomas Lowe (Lowe) was qualified as an expert in the field of arson investigation. He has been an investigator for the Jefferson Parish Fire Department Arson Unit for fourteen and one-half years. Lowe testified that the fire started after a Molotov cocktail, made with gasoline, was thrown or dropped through the front window of the dining room. Lowe collected the physical evidence at the scene, including a burnt sock matching a sock that was found on the kitchen table at Thomas' house and pieces of a Pat O'Brien's glass. He stated that a paraffin test could have been performed on the Defendant to determine whether he had gasoline on his hands. However, it was not performed because the JPSO's arson investigator responsible for doing the test was unavailable at the time.
Daniel Waguespack (Waguespack), a forensic scientist employed by the JPSO in the crime laboratory, was qualified as an expert in the field of trace analysis. Waguespack performed an analysis for the presence of any accelerate in the samples provided to him. He tested specimen number one, which was a sealed metal can that contained pieces of burned cloth. Waguespack testified that the material yielded positive results for weathered gasoline, which means that the gasoline has either been evaporated or burned, as opposed to gasoline from a pump. He also tested specimen number two, which was a metal can that contained some pieces of broken glass. Waguespack testified that he did not find any accelerate in the material in the can, but that was usual because, if there had been accelerate in the can, it could have either evaporated or been washed out. Waguespack also tested specimen number three, which was a small test tube containing an amber colored liquid, which he identified as gasoline.
The State also presented evidence of a similar crime over the objection of the Defendant. Thomas stated that in November of 1986, he lived in Bridge City in an apartment. One night when his Aunt *850 Laverne was babysitting him, he was awoken and told that the house was on fire and that they had to get out quickly. Thomas, his aunt, and his sister, who needed a wheelchair because she has cerebral palsy, were in the house that night.
Juanita Thomas Bradley (Bradley), Thomas' mother, testified that the Defendant is Thomas' father. In November of 1986, she was living in an apartment complex with her son and her daughter, when someone threw a Molotov cocktail through her bedroom window. She stated that everything caught fire. At the time of the incident, her daughter, her son, and her sister, Laverne, were in the apartment, but no one was injured. Bradley was interviewed by the police after the fire. She told the police that she thought the Defendant had set it because she had been having problems with him. However, no one saw the Defendant set the fire. About two months after the fire, Bradley told Thomas that she thought the Defendant had set the fire. Three years later, the Defendant was trying to resume his relationship with Bradley. At that time, he confessed to her that he set the fire and said that he was sorry. Bradley did not report this to the police after the Defendant's admission because she wanted to move on with her life. However, Bradley trusted the Defendant enough to allow Thomas to live with him when Thomas was in the tenth grade.
The Defendant's sole issue on appeal is that the admission of the evidence was more prejudicial than probative, too old to be relevant, and not so unique as to establish a system or pattern. He further argues that, because the crime of arson is a general intent crime and not a specific intent crime, the State's other crimes evidence should not have been admissible for the purpose of proving intent and motive. The Defendant further argues that the admission of the evidence was not harmless error because it portrayed him as a serial arsonist and a "bad man," which contributed to the jury's guilty verdict. See: La.C.E. 404(B).
The State filed a pre-trial notice of its intent to introduce evidence at trial relating to the arson in November of 1986 allegedly committed by the Defendant. After a hearing, the trial judge ruled the evidence admissible. She stated:
Well, I'm not sure that the preponderance of the evidence standard is going to stick constitutionally, and it doesn't matter, because I am clearly and convincingly convinced, and it is in. (R., p. 139).
Defendant filed an emergency writ application, seeking review of the ruling. This Court denied the application with the following disposition:
The evidence presented at the Prieur hearing shows by a preponderance of the evidence that the crime was committed by the Defendant herein. The State presented a report showing arson as the cause of the fire. Two witnesses, who were at home at the time of the fire, testified to the fact that the house was burned. Further, Juanita Thomas testified that Defendant admitted to her in a statement against interest that he did, in fact, throw a fire bomb into the window causing the fire.
State v. Dickerson, 99-1019 (La.App. 5th Cir. 9/13/99).[2]
La. C.E. art. 404 provides in part:
Art. 404. Character evidence generally not admissible in civil or criminal trial to prove conduct; exceptions; other criminal acts.
* * *
B. Other crimes, wrongs, or acts.
(1) Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts *851 is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, the Louisiana Supreme Court set forth other statutory and jurisprudential rules which also play a role in determining the admissibility of such evidence:
First, one of the factors listed in Article 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." State v. Jackson, 625 So.2d 146, 149 (La.1993). Second, the state must prove the Defendant committed these other acts by clear and convincing evidence. State v. Davis, 449 So.2d 466 (La.1984).[3]
Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403.
Finally, the requirements set forth in State v. Prieur, 277 So.2d 126 (La.1973) must be met:
(1) The State shall within a reasonable time before trial furnish in writing to the Defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach Defendant's testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the Defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the *852 jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the Defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto.
State v. Miller, 718 So.2d 960 at 962.
The appellate court will not overturn a ruling by the trial court on the admissibility of evidence of other crimes, absent an abuse of discretion. State v. Mosby, 595 So.2d 1135, 1139 (La.1992); State v. Bridgewater, 98-658 (La.App. 5th Cir. 12/16/98), 726 So.2d 987, 993.
In the writ opinion which we rendered following the Prieur hearing, we found that the State proved by a preponderance of the evidence that the 1986 crime was committed by the Defendant, and that it was admissible for that purpose. In the trial, as well as the Prieur hearing, the State presented evidence showing that arson caused the 1986 fire in the Juanita Thomas Bradley house. Further, Juanita Thomas testified that Defendant admitted to her in a statement against interest that he did, in fact, throw a fire bomb into the window causing the fire. The trial judge concluded that the State proved by clear and convincing evidence that the Defendant set the fire in 1986. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, and will not be reweighed on appeal. State v. Eisbruckner, 96-252 (La.App. 5th Cir. 1/15/97), 688 So.2d 39, 42. Thus, we find that the evidence was properly admitted to prove identity of the perpetrator in this case.
The Defendant also argues that the 1986 arson is too old to be relevant and, therefore, should not have been admitted into evidence. Remoteness in time, however, is only one factor to be considered when determining the probative value of evidence and it usually goes to the weight of the evidence, rather than to its admissibility. State v. Lisotta, 97-406 (La.App. 5th Cir. 2/25/98), 712 So.2d 527, 530; See also, State v. Guidroz, 98-377 (La.App. 5th Cir. 10/14/98), 721 So.2d 480, writ denied, 98-2874 (La.2/26/99), 738 So.2d 1061.
Next, the Defendant argues that the admission into evidence of the 1986 arson was more prejudicial than probative and, in addition, if it was erroneously admitted, the admission was not harmless error.
In State v. Driggers, 554 So.2d 720, 726 (La.App. 2nd Cir.1989), the court stated: "The other crimes evidence will no doubt be prejudicial; all evidence which tends to make it more probable than not that an individual committed a criminal offense is necessarily prejudicial." See also: State v. Jackson, 625 So.2d 146, 151 (La.1993).
In State v. Humphrey, 412 So.2d 507 (La.1981), the Louisiana Supreme Court held that the underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime.
In this case, the admission of the 1986 arson did not unfairly prejudice the Defendant. The evidence was sufficient under the Jackson standard to convict the Defendant without regard to the prior offense. Furthermore, even if the evidence was admitted in error, the error was harmless.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. *853 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. It does not "serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
The evidence shows that when Robinson ended the relationship with the Defendant, he became angry and threatened to "burn her down." After Robinson's unsuccessful attempt to resolve the dispute, the Defendant, who had been drinking, followed Robinson and Busby on foot toward Robinson's house. THOMAS went after him in his car. During the drive back to their house, the Defendant told THOMAS, "I'll set this mfon fire." When Thomas and Johnson were getting ready for bed, they heard the front door open twice. Not long after the door opened the second time, Robinson called Thomas told him her house was on fire.
After returning home from the fire scene, Thomas and Johnson saw the Defendant leaning over the kitchen sink washing his hands. Johnson saw the Defendant use bleach. Thomas smelled the chemical. The couple also observed matches and a sock on the kitchen table that were not there before they left. In addition, Johnson noticed that her Pat O'Brien's glass, which had been on the counter, was now missing.
The fire at Robinson's home was started when a Molotov cocktail was thrown through the window. The bomb was made with a Pat O'Brien's glass filled with gasoline and a sock. The partially burnt sock at Robinson's home appeared to match the sock on the kitchen table at the Thomas' home.
Based on the evidence, disregarding the prior arson accusation, we conclude that the State met its burden of proving that the Defendant committed the instant offense. Thus, we find that the admission of the prior arson did not unfairly prejudice the Defendant.
Even if the evidence was improperly admitted, the admission was harmless. The improper admission of other crimes evidence is subject to harmless error review. State v. Johnson, 98-604 (La.App. 5th Cir. 1/26/99), 728 So.2d 901, 911; State v. Cangelosi, 98-589 (La.App. 5th Cir. 11/25/98), 722 So.2d 1107, 1110. The proper analysis for determining "harmless error" is not whether, in a trial without error, the guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered was surely unattributable to the error. Johnson, 728 So.2d at 911. In this case, the guilty verdict was "surely unattributable to the error." Thus, the trial judge did not abuse her discretion in admitting the evidence of the other crime.
Finally, we have reviewed the record for patent error pursuant to La.C.Cr.P. art. 920 and find none requiring action by this Court.
Accordingly, the Defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] State v. Prieur, 277 So.2d 126 (La.1973).
[2] In State v. Fontenot, 550 So.2d 179 (La. 1989), the Louisiana Supreme Court held that a Court of Appeal's pre-trial denial of supervisory review is a decision not to exercise its extraordinary powers; it does not bar reconsideration of the issues on appeal.
[3] Prieur requires the State to show that the Defendant committed the other crimes by clear and convincing evidence. However, La. C.E. art. 1104, enacted in 1994, requires that the burden of proof for a Prieur hearing in Louisiana be identical to that required by the Federal Rules of Evidence Art. IV, Rule 404. Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) interprets the federal rule. Huddleston states that the clear and convincing standard is no longer required as the standard of proof. The Huddleston court held that evidence of prior convictions need only be proved by a preponderance of the evidence. The Fifth Circuit definitively recognizes that the preponderance of the evidence standard is the correct burden of proof in a Prieur hearing. State v. Hernandez, 98-448 (La.App. 5th Cir. 5/19/99), 735 So.2d 888, writ denied, 99-1688 (La.11/12/99), 750 So.2d 194. However, the Louisiana Supreme Court has not addressed to what extent Article 1104 and the burden of proof required by the federal rules, as interpreted by Huddleston, has affected the burden of proof required for the admissibility of other crimes evidence. See State v. Hills, 99-1750 (La.5/16/00), 761 So.2d 516, 520. In this case, the standard for the burden of proof is not at issue. Although the standard in this Circuit is "a preponderance of the evidence," the trial judge in the instant matter found that Defendant set the November 1986 fire by "clear and convincing evidence."