888 So.2d 900 (2004)
STATE of Louisiana
v.
Allen P. NGUYEN.
No. 04-KA-321.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 2004.
Rehearing Denied December 29, 2004.
*902 Paul A. Bonin, New Orleans, LA, for Appellant, Allen P. Nguyen.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler  Appellate Counsel, Douglas W. Freese  Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
On May 24, 1999, the Jefferson Parish District Attorney filed a bill of information charging defendant, Allen Nguyen, with attempted second degree murder. On August 12, 1999, defendant pled not guilty.
On August 13, 1999, the State filed written notice of its intention to introduce evidence of defendant's "other crimes" at trial. Defendant filed a motion to suppress the admission of "other crimes" evidence. On August 25, 1999, the trial court held a Prieur hearing and ruled that the "other crimes" evidence was admissible.
That same day, the matter proceeded to trial before a twelve-person jury. On August 26, 1999, the jury returned a verdict of guilty as charged. On August 27, 1999, the State filed a habitual offender bill of information alleging defendant to be a third felony offender.
Defendant filed a Motion for New Trial on September 22, 2000. The trial court heard the motion on November 2, 2000, and later denied the motion.
Defendant filed a motion to quash the habitual offender bill on January 24, 2001. On February 5, 2001, the trial court sentenced defendant on the underlying offense to twenty-five years at hard labor. *903 Defendant made an oral motion for appeal, which was granted.
On January 29, 2003, the trial judge granted defendant's motion to quash the habitual offender bill as to one of the alleged predicate offenses. That day, the judge sentenced defendant, as a second felony offender, to forty years at hard labor. Defendant made an oral motion for appeal. He also filed a Motion to Reconsider his Habitual Offender Sentence on March 11, 2003, which was denied on April 23, 2003.

Facts
Edward Lavigne("Lavigne") and Kristeena Perez("Perez") testified that they attended a New Year's Eve party in Bridge City on December 31, 1998. Lavigne testified that he left the party in the early morning hours of January 1, 1999. His sister, who was hosting the party, asked him to drive Kristeena, his nephew's girlfriend, home that night, and he agreed to do so.
After leaving the party, Lavigne and Perez stopped at a Shell gas station. At the station, Perez called Lavigne's attention to an Asian man standing on the passenger side of a van at the gas station. Perez told Lavigne that the man, who she knew as "Chino," had recently been in an altercation with Lavigne's niece and nephew. Lavigne testified that he did not know the Asian man. As Lavigne exited the gas station, he "rolled by" the Asian man and stared at him with an aggressive expression for "about five seconds." He then drove away from the station.
While driving on the West Bank Expressway, Lavigne saw the van from the Shell station pull up behind him. Perez testified that Lavigne became agitated. At this point, Lavigne's and Perez's stories diverge. He claims that he turned right onto McArthur Avenue, and pulled into the parking lot of a storage facility. Perez claims that Lavigne and the driver of the van "played chicken" up and down McArthur until the van passed Lavigne's truck and stopped on the street across from the parking lot. Perez testified that Lavigne then parked his truck in the parking lot of a storage facility, exited his truck, and walked toward the van gesturing and shouting at its occupants. Perez stayed in the truck. Lavigne testified that he was walking toward the van and shouting because he was upset and prepared to fight.
Lavigne testified that, as he reached the middle of the street, the van door opened, a man exited, and fired a gun at him three times. Lavigne was shot in the abdomen. Lavigne managed to walk back to his truck and drove to a nearby bar for help. The shooter fled the scene in the van.
At trial, Lavigne testified that he sustained serious and permanent injuries from the shooting. At that time, he had undergone three major surgeries to repair damage to his shattered spleen, his pancreas, his gall bladder, a kidney, and part of his large intestine. Due to the seriousness of his injuries, he has continuing health problems. At trial, Lavigne was unable to identify the shooter.
At trial, Perez testified that she had known Chino for three years, and identified him in court. Perez testified that she recognized "Chino" at the service station. Further, she was certain it was "Chino," and not the van's driver, who fired the shots at Lavigne because "Chino" was riding in the passenger seat of the van, which is where the shooter exited the vehicle. Further, the shooter was short and she remembered from seeing the two at the service station that "Chino" was much shorter than the driver. Perez stated that the shooting occurred at about 1:00 a.m. She also testified that, although it was dark, there was lighting from street lights *904 and the storage facility's lights. After hearing the testimony, the jury voted eleven to one that defendant was guilty of attempted second degree murder.
In his first assignment of error, defendant argues that the trial court abused its discretion in admitting evidence of another crime committed by the defendant, when he was a juvenile. He complains that the "other crimes" evidence, which was testimony regarding a 1995 juvenile offense, was irrelevant and prejudicial.
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is, and has been, that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past. La. C.E. art. 404(B)(1); State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916, 919; State v. Dauzart, 02-1187, p. 8 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. But such evidence "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." La. C.E. art. 404 B(1).
Additionally, at least one of the enumerated purposes in Article 404 B(1) "must be at issue, have some independent relevance, or be an element of the crime charged...." State v. Jackson, 625 So.2d 146, 149 (La.1993). Even if the evidence is independently relevant, it must be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403.
Finally, the requirements set forth in State v. Prieur, 277 So.2d 126, 130 (La.1973) must be satisfied. Those include written notice[1] to the defendant and a showing by clear and convincing evidence that the defendant committed the other crimes.[2] This Court has recognized preponderance of the evidence as the standard of proof in a Prieur hearing. State v. Dickerson, 00-951, p. 12 (La.App. 5 Cir. 10/30/00), 772 So.2d 845, 853, fn. 3, writ denied, 00-3515 (La.8/31/01), 795 So.2d 1209.
In this case, the State filed a Notice of Intention to Use 404(B) Evidence on August 13, 1999, twelve days in advance of trial. The notice asserted that the State would show defendant "attempted another murder at a gas station on October 20, 1995[.]" The notice further maintained that the "other crimes" evidence was admissible to establish defendant's knowledge, intent, motive and system. Defendant filed a motion to suppress the "other crimes" evidence.
The trial court held a Prieur hearing on August 25, 1999. The State produced Exhibit A, a police incident report dated October 20, 1995. The report shows that victims Bradley Alfaro and Ryan Warren were at a filling station on Lapalco Boulevard in Harvey. When they exited their vehicle, they saw a white male whisper *905 something to a Vietnamese male. The Vietnamese male yelled "211 Bloods," pulled a handgun from his waistband, and pointed his weapon at Alfaro's chest. Alfaro, Warren, and their companions jumped into their car and started to pull out of the gas station. The Vietnamese male fired six shots, hitting the car three times. None of the car's occupants were injured.
The State also introduced Exhibit B, a police report relating to the instant offense; Exhibit C, a booking photograph of defendant; and Exhibit D, a certified copy of a juvenile court petition naming Allen Nguyen as defendant, and alleging five counts of attempted first degree murder based on the October 20, 1995 shooting incident. Attached to the petition were juvenile court minute entries, and a waiver of rights form showing that defendant entered pleas of nolo contendere to one count of attempted second degree murder and four counts of aggravated assault with a firearm.[3]
After hearing arguments from counsel, the trial judge denied defendant's motion to suppress the "other crimes" evidence. The judge did not give reasons for his ruling. We note that the State proved defendant committed the earlier offense through clear and convincing evidence.
At trial, the State adduced the following testimony from three witnesses regarding crimes that defendant committed as a juvenile. Ryan Warren testified that, in October 1995, he and four friends pulled into a service station on Lapalco Boulevard near the Woodmere Subdivision in Harvey. The driver of the car in which Warren was riding had a verbal confrontation with defendant. Defendant pulled a gun on Warren's companion, who was unarmed. Warren and his friends fled in their car. Defendant fired six shots at the car, and three bullets hit the side of the vehicle.
Mark Rodrigue testified that he was buying gas at a Texaco filling station on Lapalco Boulevard in October 1995, when two cars arrived. There was a verbal exchange between occupants of the cars. Their voices grew steadily louder. A man from the first car pulled a gun out of his waistband and fired at the driver of the second car. The second car sped out of the gas station, and the shooter's car followed. Rodrigue further testified that he met with Detective Curtis Snow and identified the shooter in a photographic lineup. At trial, he was unable to identify the defendant as the shooter.
Detective Snow testified that he investigated the 1995 shooting incident. He recovered six spent bullet casings from the Texaco station. He determined that three bullets had struck the victims' car. Snow showed a photographic lineup to witness Mark Rodrigue, and Rodrigue identified defendant as the shooter in the incident.
On appeal, defendant argues that the "other crimes" evidence, which was presented at the beginning of the State's case,[4] was not necessary to the State's case, and that the State's objective in introducing it was simply to paint him as a bad person. Defendant argues on appeal, as he did at the Prieur hearing, that intent was not genuinely at issue in this case. *906 The State responds that the "other crimes" evidence was necessary to prove the element of intent.
Intent is an element of attempted second degree murder. In order to prove that a defendant is guilty of attempted second degree murder, the State is required to establish that he intended to kill the victim, and that he committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1.
Specific intent to kill can be inferred, however, from the fact that the defendant deliberately pointed a gun at the victim and fired at close range. State v. Robinson, 02-1869, p. 4 (La.4/14/04), 876 So.2d 66, 74. Specific intent may also be inferred from the extent and severity of the victim's injuries. State v. Stacker, 02-768, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 606, writ denied, 03-0411 (La.10/10/03), 855 So.2d 327.
Before evidence of other crimes is admitted as proof of intent, however, three requirements must be satisfied: "(1) the prior acts must be similar, ... (2) there must be a real and genuine contested issue of intent at trial, ... (3) the probative value of the evidence must outweigh its prejudicial effect." State v. Farhood, 02-490, p. 20 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 231.
The record supports defendant's argument that intent was not genuinely at issue in this case. Under the facts of this case, it is clear that the perpetrator deliberately shot Edward Lavigne; there was no testimony that the shooting was accidental or inadvertent. Further, Nguyen's defense was one of identity. Defendant did not claim a lack of specific intent; he claimed that he was not the shooter.[5]
Importantly, the "other crimes" evidence at issue in this case is comparable to the evidence reviewed by the Prieur court. In Prieur, the defendant was charged with armed robbery of Morris Johnson, a public transit bus driver, at gunpoint. At the trial for that offense, the State introduced testimony from the victims of two other armed robberies Prieur was alleged to have committed. One of the robberies occurred eight days after the charged offense at a service station; the other robbery, which also involved a public transit driver, occurred two weeks prior to the charged offense. Prieur argued on appeal that the testimony constituted inadmissible "other crimes" evidence.
In Prieur, the supreme court held that admission of the "other crimes" evidence violated the exclusionary rule. The court found that the service station robbery, because it bore little similarity to the charged offense, could not be used to show system. The court further found it was apparent that the evidence of the service station robbery was offered to show the defendant's bad character, and that a defendant's character is not properly at issue unless he chooses to put it at issue. State v. Prieur, 277 So.2d at 129. The Prieur court also rejected the suggestion that the "other crimes" evidence went to proving intent, or that it was admissible under any of the other exceptions to the exclusionary rule. The court commented, "Under the facts developed by the State it was quite clear that whoever held up the bus driver, Morris Johnson, knew what he was doing and intended what he was doing; there was no question of the robber's acts being `inadvertent, accidental, unintentional or *907 without guilty knowledge.'" Id. We, as the supreme court did in Prieur, reject the suggestion that testimony from three individuals, including one police officer, regarding an aggravated assault at a service station in 1995 went to prove a defendant's intent in an attempted second degree murder on a side street in 1999.
In this case, the State also listed system in its 404(B) notice as another purpose for the evidence of the 1995 shooting. Louisiana jurisprudence allows the use of "other crimes" evidence to show modus operandi (i.e., system) as it bears on the issue of identity when the prior crime is so distinctively similar to the one charged, especially in terms of time, place, and manner of commission, that one may reasonably infer that the same person committed both offenses. In order to assure that system evidence involving other crimes does not become a means of introducing character evidence prohibited under Article 404(B), it must be closely analyzed to determine whether it exhibits "such peculiar modes of operation to distinguish them as the work of one person." State v. Marshall, 02-747, p. 8 (La.App. 5 Cir. 2/11/03), 841 So.2d 866, 871, writ denied, 03-0659 (La.6/6/03), 845 So.2d 1090 (quoting State v. Hills, 99-1750, pp. 6-7 (La.5/16/00), 761 So.2d 516, 521).
While the 1995 shooting and the instant offense, at issue here, both involved chance encounters at gas stations and the firing of guns with little apparent provocation, the incidents did not possess what might be termed peculiarly distinctive features. There was, for example, no evidence that the same caliber of gun was used in both crimes. Moreover, the earlier shooting incident occurred four years before the instant offense. The first offense was too remote in time from the instant offense to be distinctively similar to show system. We reject the suggestion that the "other crimes" evidence was admitted to reveal a system by this defendant.
Third, the State listed motive as a purpose for which it intended to use the "other crimes" evidence. "`Motive evidence reveals the state of mind or emotion that influenced the defendant to desire the result of the charged crime.'" State v. McArthur, 97-2918, p. 3 (La.10/20/98), 719 So.2d 1037, 1041[6] (quoting, D. Bryden and R. Park, "Other Crimes" Evidence in Sex Offense Cases, 1994 Minn. L.Rev. 529, 541). "`In order to have independent relevance, the motive established by the other crimes must be more than a general one, such as gaining wealth, which could be the underlying basis for almost any crime; it must be a motive factually peculiar to the victim and the charged crime.'" Id. (quoting State v. Sutfield, 354 So.2d 1334, 1337 (La.1978)).
Here, the State argues that the 1995 conviction was necessary to show motive to establish defendant's guilt. Motive, however, is not an element of the charged offense; the State was not required to establish motive to meet its burden of proof for attempted second degree murder. State v. Johnson, 324 So.2d 349, 353 (La.1976); State v. Dean, 487 So.2d 709, 714 (La.App. 5 Cir.1986), writ denied, 495 So.2d 300 (La.1986).
In this case, the "other crimes" evidence did not tend to show motive for committing the instant offense against Edward Lavigne. Rather, it showed that defendant had a violent temperament in general, and that he had a tendency to use his gun when provoked to anger. As such, the *908 testimony was inadmissible character evidence. We reject the suggestion that the evidence was introduced to show defendant's motive for committing the charged offense.
Based on the foregoing, we find that the evidence of the 1995 shooting was not admissible under the provisions of Prieur, or any of the exceptions set forth under Article 404(B). However, not every violation of pre-trial procedure, including Prieur violations, requires reversal. The burden is on the defendant to show that he was prejudiced by the trial court's admission of Prieur evidence. State v. Dauzart, 02-1187 at p. 9, 844 So.2d at 165-166.
In this case, defendant argues that he was prejudiced by the "other crimes" evidence because (1) the 1995 shooting was a juvenile offense and (2) the State presented it before the evidence regarding the instant offense. Defendant asserts in his brief that there is no jurisprudence which approves the use of juvenile offenses as "other crimes" evidence in criminal court. Article 412(A) of the Louisiana Children's Code provides, in part, "Records and reports concerning all matters or proceedings before the juvenile court, except traffic violations, are confidential and shall not be disclosed except as expressly authorized by this Code." Subpart E of that article provides: "For good cause when the information is material and necessary to a specific investigation or proceeding, the court may order the release of individual records and reports, or certain information contained therein, to a petitioner, limited to the specific purpose for which the court authorizes release." See, however, State v. Carr, 620 So.2d 288 (La.App. 1 Cir.1993), rev'd on other grounds, 620 So.2d 1325 (La.1993).
In Carr, the defendant was charged with second degree murder. The State noticed its intention to use "other crimes" evidence consisting of juvenile offenses. The juvenile offenses related to robberies defendant committed while faking cocaine transactions. The State alleged the defendant committed the murder under similar circumstances. After a Prieur hearing, the trial court ruled the "other crimes" evidence was admissible. The First Circuit denied the defendant's writ application and affirmed the trial court's ruling, holding that the benefit of the "other crimes" evidence in ensuring a just prosecution outweighed the State's interest in maintaining the confidentiality of the juvenile records. State v. Carr, 620 So.2d at 292.
In the instant case, we do not find that the "other crimes" evidence was necessary to ensure a just prosecution. The State had an eyewitness, Kristeena Perez, to testify that she saw defendant shoot the victim. Further, the prejudicial effect of the "other crimes" evidence, including testimony from a police officer, seems greater than its probative value. Further, it is possible that the jury was prejudiced by the State's introduction of the "other crimes" evidence at the beginning of its case even before hearing evidence of the instant offense.
The erroneous admission of "other crimes" evidence is subject to harmless error analysis. State v. Morgan, 99-1895, p. 5 (La.6/29/01), 791 So.2d 100, 104. The test for determining harmless error is whether the verdict actually rendered in the case was surely attributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Morgan, 99-1895 at p. 6, 791 So.2d at 104.
After reviewing the record in its entirety, we conclude that the jury's verdict was likely based on the testimony of Edward Lavigne, Tina Hazelett, and, specifically, eyewitness Kristeena Perez. While we *909 would caution prosecutors against repeating the same course of action in future cases, we cannot say that this particular verdict was attributable to the erroneously introduced evidence. Accordingly, while we agree that the "other crimes" evidence was erroneously introduced at trial, we find that introduction was harmless and does not constitute reversible error.
In his second assignment of error, defendant argues that the trial court erred as a matter of law in admitting evidence of another "wrong" committed by the defendant without complying with prior notice requirements to the defendant. Defendant complains that the trial court erred in admitting testimony from Tina Hazelett, since the State failed to provide pre-trial notice of her testimony, and there was no Prieur hearing to determine the admissibility of said testimony.
At trial, Tina Hazelett testified that, on Christmas Eve 1998, she and her cousin, who was also Lavigne's nephew, were involved in an altercation with defendant. She further testified that Kristeena Perez was there at the time.
As the State points out, Hazelett's testimony did not constitute evidence of "other crimes" as contemplated by La. C.E. art. 404(B). Hazelett merely testified that she and her cousin were involved in an altercation with defendant. There was no assertion that defendant was the instigator, and Hazelett did not give particulars as to what any of the parties said or did. Because the testimony was not evidence of other bad acts, the State was not required to provide pre-trial notice to defendant.
Further, Hazelett's testimony may have been admissible under the doctrine formerly known as res gestae. When evidence of "other crimes" or bad acts tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted. State v. Marshall, 02-1067, p. 15 (La.App. 5 Cir. 2/25/03), 841 So.2d 881, 892, writ denied, 03-0909 (La.9/26/03), 854 So.2d 345. Evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Charles, 00-1586, p. 5 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 708. A close connexity between the charged and uncharged conduct is required to insure that "`the purpose served by admission of the other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" Id. (quoting State v. Colomb, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076).
Hazelett's testimony revealed how Kristeena Perez recognized defendant at the time of the shooting, and why she pointed him out to Edward Lavigne. In State v. Donald, 99-3612, p. 8 (La.12/8/00), 775 So.2d 1054, 1059 (quoting State v. Constantine, 364 So.2d 1011, 1014 (La.1978)), the Louisiana Supreme Court commented, "Apart from any considerations of res gestae or integral act evidence, `matters which are... logically relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses.'" We find no error in the admission of Hazelett's testimony.
In his third assignment of error, defendant argues that the trial court erred as a matter of fact when it failed to guarantee the defendant a fair trial by failing to instruct the jury on the limited purpose and use of evidence of another crime or wrong.
When "other crimes" evidence is admitted in a jury trial, the court, upon the defendant's request, must charge the jury as to the limited purpose for which the *910 evidence is to be considered. Moreover, the final jury charge must contain an instruction regarding the limited purpose for which the "other crimes" evidence was received. At that time, the court must instruct the jurors that the defendant cannot be convicted of any charge other than the one named in the indictment, or one responsive thereto. State v. Prieur, 277 So.2d at 130. See also, State v. Kennedy, 00-1554, p. 6 (La.4/3/01), 803 So.2d 916, 921.[7]
Our review of the record reveals, and defendant concedes, that he did not request a limiting charge at the time the "other crimes" evidence was introduced. Under Prieur and Kennedy, because the defendant did not request a limiting instruction, the trial judge was not required to issue a limiting instruction at the time of the "other crimes" testimony.
Defendant also complains that the trial court erred in failing to include a limiting instruction on "other crimes" evidence in its jury charges. Our review of the court's final jury instructions reveals that there was no mention of "other crimes" evidence. Further, we note that defendant neither requested a special jury charge nor timely objected to the final jury charges.
La.C.Cr.P. art. 801(C) provides:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefore shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
This Court has held that, the requirements of Prieur notwithstanding, a defendant is required to make a timely objection under Article 801 in order to preserve a jury charge issue for review. State v. Dauzart, 02-1187 at p. 11, 844 So.2d at 167. Defendant did not make a timely objection; therefore, defendant did not properly preserve the issue for appellate review. We are precluded from addressing this issue.
In his fourth assignment of error, the defendant argues that the trial court erred in unfairly restricting cross-examination of the key eyewitness. Defendant claims that he was deprived of his right of confrontation when the trial court limited his cross-examination of Kristeena Perez.
Before the trial commenced, the trial judge held a bench conference with the prosecutor and defense counsel. Defense counsel stated that he had reason to believe that Kristeena Perez, the State's eyewitness, had been confined to a mental institution. When the prosecutor responded that he had no information to that effect, defense counsel referred to the statement given by Perez in which she reported having been at a place called "Sanitary, Incorporated." Neither the State nor the defendant had further information on this facility. Further, both the prosecution and the defense were aware that Perez was 17 years old at the time of trial.
Before the jury was brought into the courtroom, the prosecutor asked the court to admonish defense counsel not to question Perez about any prior bad acts that did not result in convictions. When defense *911 counsel stated that he only planned to ask Perez about a prior juvenile adjudication, the prosecutor asked the court to prohibit counsel from questioning Perez about her prior juvenile adjudication for simple battery since it had no bearing on Perez's veracity as a witness.
The trial judge ruled that defense counsel would not be allowed to question Perez regarding juvenile offenses unless he could first demonstrate to the court that such questioning would be probative of some sort of bias on Perez's part. Counsel responded by stating, "Well, put it like this, Judge, and it will probably come out in court. It's in her statement." Counsel did nothing further to show valid grounds for allowing evidence of Perez's juvenile offenses.
During his cross examination of Perez, defense counsel asked where she was living when she gave her statement in this case in January of 1999. The witness answered that she was living in a girl's home called Sanctuary. When defense counsel asked why she was living in a girl's home, the prosecutor objected. The trial judge sustained the State's objection to this line of questioning on grounds of relevance. The judge further ordered that "[t]here will be nothing further addressed regarding that facility, nor Rivarde, nor any other facility while as a juvenile."
The Sixth Amendment to the United States Constitution guarantees the right of the accused in a criminal prosecution "to be confronted with the witnesses against him." Article I, Section 16 of the Louisiana Constitution specifically affords a defendant the right to "cross-examine the witnesses against him." The cross-examiner is not only permitted to delve into the witness's story to test his perceptions and memory, but has traditionally been allowed to impeach the witness. State v. Nash, 475 So.2d 752, 754 (La.1985); State v. Robinson, 02-1253, pp. 7-8 (La.App. 5 Cir. 4/8/03), 846 So.2d 76, 82-83, writ denied, 03-1361 (La.11/26/03), 860 So.2d 1131.
Generally, to attack the credibility of a witness, a party may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his statement. La. C.E. art. 607(C). The right of confrontation is not so unlimited, however, as to require that a defendant be allowed, on cross-examination of a state witness, to make any and all inquiries of the witness's character. The inquiry must be relevant. State v. Hills, 03-716, p. 9 (La.App. 5 Cir. 12/9/03), 866 So.2d 278, 284.[8]
Evidence of a witness's prior juvenile adjudication is not commonly admissible to attack the witness's credibility. La. C.E. art. 609.1(F). But the Louisiana Supreme Court has held that:
The extreme importance and constitutional status of the right to confrontation (which includes the reasonable opportunity to impeach the witness' credibility) requires that any statutory right to confidentiality of juvenile proceedings under these circumstances must yield if the discrediting value of a prior juvenile adjudication is such that its disclosure is essential to a fair trial.
State v. Toledano, 391 So.2d 817, 820 (1980). This standard entails a balancing test to determine whether the impeachment value of the adjudication is outweighed by the State's interest in maintaining the confidentiality of juvenile records. Davis v. Alaska, 415 U.S. 308, 319, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 *912 (1974); State v. Smith, 437 So.2d 802, 804 (La.1983). See also, State v. S.P., 608 So.2d 232, 234-235 (La.App. 5 Cir.1992).
In this case, the trial judge gave defense counsel the opportunity to offer a valid basis for allowing further questioning but counsel failed to do so. Counsel did not proffer any court records or other evidence under La. C.E. art. 103, which revealed that further information on this issue was relevant to this case. The record does not, therefore, reflect how further cross-examination would have helped the defense. See, State v. Jackson, 03-0427, p. 9 (La.App. 4 Cir. 12/10/03), 863 So.2d 589; State v. Searcy, 621 So.2d 83, 87-88 (La.App. 2 Cir.1993). Accordingly, we find no abuse of the trial judge's discretion in prohibiting counsel's line of questioning on grounds of relevance.
In his fifth assignment of error, the defendant argues that the sentencing court erred in vacating a sentence of 25 years, which was within the sentencing range for a second offender, and increasing it to 40 years. Defendant argues that his habitual offender sentence of forty years is excessive. We decline to consider this assignment of error because we have discovered patent errors in the habitual offender proceeding that requires reversal of the habitual offender finding and sentence.
Finally, we have reviewed the record for errors patent. La. C.Cr.P. art. 920. Upon review, we find that the trial court found defendant to be a second felony offender without holding a habitual offender hearing. Here, the State filed a habitual offender bill of information on August 27, 1999, alleging defendant to be a third felony offender. Defendant filed a motion to quash the habitual offender bill on January 24, 2001. The minute entry for September 27, 2001 indicates that the habitual offender hearing was continued without date. Curiously, that minute entry also states, "Multiple Bill Hearing is under Advisement."
The record does not disclose any activity in the case between that date and January 29, 2003. On that day, the judge granted defendant's motion to quash the habitual offender bill as to one of the predicate offenses.[9] The trial judge then sentenced defendant, as a second felony offender, to forty years at hard labor.
In order for a defendant to be found a habitual offender, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person identified in the records. State v. Staggers, 03-655, p. 10 (La.App. 5 Cir. 10/28/03), 860 So.2d 174, 180. As we have noted, the record does not reflect that the trial court held a habitual offender hearing or that the State offered any evidence to prove the allegations in the bill of information. Further, the record does not reveal that defendant admitted to the allegations in the bill. Accordingly, we vacate the trial court's habitual offender finding and sentence, reinstate defendant's original sentence, and remand for further proceedings.
CONVICTION AFFIRMED; HABITUAL OFFENDER FINDING VACATED; REMANDED.
NOTES
[1] Prieur, 277 So.2d at 130, requires that the State specify in its notice the exception to the general exclusionary rule upon which it relies for the admissibility of the other crimes evidence.
[2] La. C.E. art. 1104, enacted in 1994, requires that the burden of proof in Prieur hearings in Louisiana conform to that required by Federal Rules of Evidence, Rule 404. In Huddleston v. United States, 485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988), the United States Supreme Court held that the clear and convincing standard is no longer applicable, and that preponderance of the evidence is the proper burden of proof. The Louisiana Supreme Court has declined, however, to address the question of how La. C.E. art. 1104 and Huddleston affect the burden of proof with regard to other crimes evidence.
[3] At that time, aggravated assault with a firearm was an offense under La. R.S. 14:37.2. That offense is now proscribed by La. R.S. 14:37.4.
[4] We note that the defendant attempted to seek emergency supervisory review of the trial judge's ruling on the Prieur issue on the first day of trial. This Court refused review after discovering that the issue was moot because the jury had already heard the testimony in question.
[5] In State v. Kennedy, 803 So.2d at 923, fn. 8, the supreme court noted, "that `[t]he prosecution cannot credit the accused with fancy defenses in order to rebut them at the outset with some damning piece of evidence.'" (Citation omitted.)
[6] McArthur is superseded by La. C.E. art. 412.2 only with respect to other crimes evidence of sexually assaultive behavior. See, State v. Brown, 03-1747, p. 13 (La.App. 3 Cir. 5/12/04), 874 So.2d 318.
[7] Kennedy is superceded by La. C.E. art. 412.2 only with respect to other crimes evidence of sexually assaultive behavior. See, State v. Zornes, 34,070, p. 1 (La.App. 2 Cir. 4/3/02), 814 So.2d 113, 114, fn. 1, writ denied, 02-1280 (La.11/27/02), 831 So.2d 269.
[8] A writ was filed with the Louisiana Supreme Court on June 2, 2004. As of this writing, there has been no action by the supreme court.
[9] The judge said he had twice heard arguments on defendant's motion to quash the predicate. On one of those occasions, arguments were heard in chambers. The judge further noted that he had taken the matter under advisement. Aside from those comments by the judge, the record does not reflect argument of the motion.